And I understand that for the petitioner, we have a, why don't you tell us how we're going to divide argument here. Okay, so yes, your honor, I will be arguing the removability issue under 226421. And you're attorney baron? And yeah, I'm Kyle Barron. Want to get names right? And then we have a law student, Margaret Knoll. That's correct. Okay, well, I can't wait to get to you too. And then we have attorney Hartman for the appellee. So I understand, attorney baron, you would like to do eight minutes initially and then hold two minutes for rebuttal, is that right? That's correct. And before we start the clock, why don't you just tell us, remind us how you're planning to divide the topics for argument? So I'll be arguing just the removability issue in the first petition. And law student Margaret Knoll will be just arguing the motion to reopen issue in the second petition.  Okay. Well, that's wonderful. So please proceed whenever you're ready. Good morning, your honors, and may it please the court. Kyle Barron for petitioner Joaquin Garcia. The sexual abuse of a minor aggravated felony ground triggers mandatory detention in a mandatory removal order and cuts off all opportunity for discretionary relief. The Supreme Court has cautioned this provision should only extend to especially egregious felonies akin to murder and rape. And the Supreme Court has also instructed that this ground should only be sustained when a state statute of conviction is a precise match. I appreciate you're going to walk through the analysis, but could you just jump to what I think is the meat and potatoes of this case, which is we've decided this in Dubuque. You're asking us to review it, our decision, I guess, in light of Loper. Brian, is that where the rubber meets the road here? So there are two independent ways that this court could find for Mr. Garcia. And the first is whether an age gap is required in the generic federal definition. No, no, no, I know, but again, I think we have to pass through the pathway of Dubuque, right, if I'm saying the case right? Yes, your honor, Dubuque. So we've already held its categorical match, right? Not on the age issue, the age gap issue was not raised. So you're arguing Dubuque, you can get around, because even though we held its categorical match, you're trying to raise an argument that was not raised in Dubuque. So we could say, well, Dubuque is wrong, because an extra argument was not presented, and therefore you're free to argue that we're not bound by Dubuque. Is that a fair characterization? Yes, your honor, and I would say with the 11th Circuit decision in Legere, it was very similar to this posture in which they had already found a specific state statute had been an aggravated felony. But then this exact argument had not been raised by the petitioners in that case. And so they were able to reach that decision without going on bonk, and just with a three-judge panel finding that the generic federal definition did require some age gap. But then there is an independent basis to find for Mr. Garcia, and that is under Loper-Bright. This court is able to reach the issue of whether New York's broad definition of sexual contact provides an additional basis. So how do we decide whether we should do that or not? Well, this court uses the prior precedent rule to determine whether intervening Supreme Court decision gives the court the authority to revisit a prior holding. And in this case, an intervening decision is one in which undermines an assumption of the prior decision. And because both Rodriguez and Dubuque were premised on Chevron deference to the agency, this gives the court the authority to revisit those decisions. So tell us why when the Supreme Court said in Loper-Bright that its decision over ruling Chevron is not a justification for disturbing statutory stare decisis, why we should decide that Loper-Bright is a basis for disturbing statutory stare decisis. Why don't you explain? The Supreme Court in Loper-Bright was only citing to its own precedent, and the precedent's just talking about whether its own cases should be subject to stare decisis. But circuit courts have their own stare decisis principles, and specifically, it's the prior precedent rule here. So you're saying we should not follow the Supreme Court's approach to the same question? We're not bound by it, and we shouldn't follow it? No, Your Honor, those are distinct stare decisis principles that apply specifically to the Supreme Court, which has a different institutional role, and there are different reliance interests at issue there. Who said that besides Justice Barrett and Professor Barrett's law review article? Who has said that? Have we said that? Have we said that we have a weaker stare decisis principle in the courts of appeals for statutes than the Supreme Court does? Yes, Your Honor, it has said that this court does not mechanically apply statutory stare decisis. Well, I don't know the Supreme Court does it mechanically either. I think they think carefully about it, and we'd like to think we think carefully about it as humans. So I don't know what mechanically, the word mechanically adds is an adverb. I think in this context, there are special reasons about both Rodriguez and DeBake in which it should be subject to the prior precedent rule that really shows that Loper-Bright is an intervening case in this context. And in Rodriguez, the court specifically raised doubts as to the merits of the agency's decision, and additionally, there was not independent analysis outside of just deferring to the board's broad definition. And in those cases, this court has found that when an intervening Supreme Court decision kind of hollows out the reasoning, and this is in dosher, that that can constitute an intervening decision that allows the court to revisit those prior precedents. That would require us to articulate very clearly this rule that you're proposing, that we don't apply stare decisis as strongly as the Supreme Court does when it comes to a prior precedence interpreting a statute, right? No, Your Honor. I think that, I guess, yes, it would not be the same as how the Supreme Court applies statutory stare decisis, and that's because when they're making this rule, it's applying to all the courts, everyone in the United States, and there are just very distinct reliance issues that aren't at issue in a case for the circuit courts. We don't have to worry about the impact of what we hold here on the case law. I'm sorry, Your Honor. I couldn't hear the last... You didn't respond. I'm saying that we don't have to worry about the effect of what we're doing here on every state in the union, including New Mexico. We're just worried about New York, and that gives us a broader ability to change. Yes, Your Honor, and I think in a context like this, where this court expressed doubts about the merits of the decision, it's also inconsistent with what other circuit courts are doing, so there are other... The intervening case doesn't give this court authority to revisit the prior decision. There's other prudential reasons. Are other circuit courts... I'm curious because this principle would extend far beyond the immigration context, right? Are other circuit courts overruling their precedents involving statutory interpretation based on Loper-Brett, to your knowledge? No, Your Honor, but I have not seen where there is a case where these issues are raised, where the court did make prior raised concerns about the merits of the agency's decision. In other words, this issue has not, as far as we know, arisen in other circuits. This has arisen in other circuits, and the Ninth Circuit, in a case called Lopez, did raise this issue. When you say this issue, I just want to make sure we're on the same page. Which issue? Whether they could revisit a prior precedent in light of Loper-Brett. And what did the Ninth Circuit say? They did not, but they also just didn't distinguish between the stare decisis principles in the... So they took what Loper-Brett said about not being a basis for disturbing statutory stare decisis, and they applied it to their own circuit case law. The court did something interesting, which was really applied Skidmore in a way that was very similar to Chevron, honestly. And I would say that approach isn't what the Supreme Court did, for instance, in Esquivel-Quintana, in which it didn't just apply Chevron light when it found that the statute wasn't ambiguous. Instead, it looked at the traditional tools of statutory interpretation. And in nowhere in Esquivel-Quintana did they talk about Skidmore or do some other deferential analysis. And that's what the court did in Lopez. Okay. Unless there are any questions right now, I know we probably focused you on some issues we were more focused on than perhaps you would have liked. But you have two minutes for rebuttal. We'll see you again. Why don't we hear from Ms. Knoll? Let's talk about the motion to reopen. Before you start the clock, because it would be unfair to take this off your time, what law school are you from? The University of Maryland School of Law. How do you start the clock? Thank you. Welcome. Thank you. Can you all hear me okay? Yeah. Okay. Great. Okay. Good morning, your honors. May it please the court. Margaret Knoll, a supervised law student, on behalf of the petitioner. If this court reaches Mr. Garcia's second petition for review, it should find that the board erred in denying his motion to reopen for two reasons. First, Mr. Garcia qualifies for equitable tolling because an extraordinary circumstance prevented him from filing his motion to reopen on time despite his reasonable diligence. And second, the board's decision... I suggest you talk just a little slower. Sorry. You can get less into five minutes, but we'll get more out of it. And second, the board's denial is inadequately reasoned. Because of these errors, an immigration judge has never considered highly salient evidence about Mr. Garcia's health that directly impacts his claims for protection under the CAT and withholding of removal. To begin with the first grounds for reversal, the board's equitable tolling determination is incorrect as a matter of law. The extraordinary circumstance here is that no medical professional told Mr. Garcia of the ways that his diabetes manifests cognitively and neurologically until after the motion to reopen deadline had passed. As a detained indigent layperson, this complex medical knowledge evaded Mr. Garcia until he... As he relied on jail medical staff and opinions from several medical professionals outside of the prison to inform his understanding of his disease. So can I ask you, I think you said as a matter of law, right? Why is that a matter of law as opposed to a matter of fact? Of what facts are in the record and whether those facts are strong enough on your client's side to warrant this relief? Why is it as a matter of law? Like a black and white on-off switch. So equitable tolling is a legal determination and neither party suggests that the board made any adverse fact finding below. So this court can review the board's legal... What do you mean legal? Yeah, let's probe that because we often try to talk about what's the difference between a factual determination and a legal determination and which are both a combination, right? Looking at the facts and then applying a legal standard to the facts. So tell us a little bit about how you think this fits into that sort of spectrum, let's say, between purely legal, purely factual and maybe something in the middle. Yeah, Your Honor, this is a mixed question of law and fact. But I would point to the Fourth Circuit's analysis in Williams where they did a similar standard of review analysis about an equitable tolling determination and found that the due diligence question was ultimately a question of law because you're asking the court to do legal work. How diligent is someone to meet the legal standard? So that's why we say here that this case presents a question of law for de novo review. And the best reading of the board's decision is that it took these undisputed facts and applied a legal standard to these facts. Although that is... Our second ground for reversal is that the board's decision on this is inadequately reasoned and poorly explained. So I can get into that if you want. Okay, so first on the extraordinary circumstance prong, the board characterizes this new material medical evidence as merely updated medical records. And we have no idea if the board considered a plethora of evidence that Mr. Garcia presented, such as new evidence of a neurological event that happened right before he filed his motion to reopen, where he had a visible and cognitive lapse after taking a medication interaction. So we don't... When you say we have no idea if the board considered that information, I mean, certainly the decision... Their response is not detailed, but all of this information is in front of the board. So what is the reason for saying that we don't know whether or not the board considered it? So the board did refer to several pieces of evidence, but did not address it specifically in its analysis. And it did not address at all the neurological lapse that Mr. Garcia had just prior to filing the motion to reopen. And this court has reversed in similar situations, for example, in Ojo v. Garland, where this court reversed in a cat claim where it wasn't clear that the board had considered this material major piece of evidence. And if it did consider it, it didn't explain why it rejected this evidence. So because of the board's cursory analysis, we don't know if it considered all of the evidence, if it misunderstood some of the record evidence, or if it misapplied this legal standard. So those are all reasons that we think that this court should remand for the board to do a better job. And I'm almost out of time. Can I briefly conclude? Absolutely. Okay. Until the red light's on. It's all yours. So my colleague, Ms. Barron, will return for rebuttal on the movability issue. We ask the court to vacate and remand the board's denial of reopening because this is a decision that undermines the principles of fairness central to equitable tolling and allows the agency to skirt the requirements of reasoned decision making. Thank you. Thank you very much. Why don't we hear from the government now? We have Mr. Hartman. Good morning, your honors. May it please the court. Jeffrey Hartman appearing for the attorney general. I'd like to just pick up with the motion to reopen issue. In our view, the court has jurisdiction to address this issue under GARA-Las Bria. The equitable tolling issue falls within 1252A2D, but on the merits of both the extraordinary circumstance and the due diligence component, Mr. Garcia cannot prevail. The extraordinary circumstances standard requires that there be an extraordinary circumstance that prevents the litigant from pursuing their rights. Here, that didn't happen. Mr. Garcia had already filed the motion to remand, which the board considered in issuing its August 22 removal order, considering the same types of claims about the particularly serious crime determination and the convention against torture claim. And so Mr. Garcia was unnoticed that the clock was ticking and he hasn't established through his declaration at AR-649-50. And your point there would be twofold, I imagine. Number one, he knew about his diabetes diagnosis because that was the premise of his motion to remand. And number two, he was filing motions. It wasn't like he was in the hospital in a coma. He was filing motions about stuff. So who's to stop him from filing this motion? That's sort of, is that the gist of your argument? I think so. And because of the nature of the declaration, the record just doesn't establish that there was some extraordinary thing that prevented him from speaking with Dr. Rao in June of 2023 or seeking any of his other evidence. Would you turn to the argument of the issue that Attorney Barron was addressing earlier and maybe pick up with that? Maybe would you, at least for my sake, just pick up what your view is about Loper-Bright and her suggestion, which I think is consistent in particular with the Law Review article that Justice Barron wrote, that there are different considerations at stake for statutory stare decisis in the courts of appeals than in the Supreme Court. And even if the Supreme Court said in Loper-Bright, this case is not a basis for disturbing prior statutory interpretations, that maybe they were talking just about themselves, not so much about us, the courts of appeals. Would you maybe tackle that? Sure. So our view is that Loper-Bright was discussing all of the courts that have relied on the Chevron doctrine at 2273, when the court said that its decision was not calling into question precedents that relied on Loper-Bright. I take the point that courts of appeals are differently situated than the Supreme Court in resolving circuit splits or other legal issues. But that doesn't mean that the doctrine of stare decisis applies with any less force in this court. Of course, there are many important reliance interests in cases like this one. Criminal litigants make pleas based on this court's immigration precedents. And so there's a really strong reliance interest in keeping a stable doctrinal foundation around the aggravated felony provision in particular. And under this court's precedents, like a fury applying circuit law in light of the Supreme Court's decision, the Supreme Court decision needs to be clearly reconcilable with this court's prior decisions. And even in cases like Acevedo, which came on the heels of Escobar-Quintana, which squarely addressed the sexual abuse of a minor provision, this court continued to adhere to its circuit precedents. And so I think for this court to depart from four decades of precedent relying on Chevron, the Supreme Court would really need to send a much clearer signal. And I think the Sixth Circuit in the Tennessee case definitely dealt with then-Judge Barron's law review article and followed the directive from Loper-Bright in adhering to precedent. The Ninth Circuit in the Lopez case dealt with a situation where there was a published board precedent. And there, the Ninth Circuit continued to defer to that precedent, even after Loper-Bright. And we think the court should take the same course here. Sir, what about your adversary's other argument that, even accepting that we have the duty to follow prior precedent in this court and that Loper-Bright is not, let's say, hypothetically a basis for disturbing it, but what happens when we hold something in a prior precedent, but in a new case, someone raises a completely different legal argument for why that is not so, and it was not raised in the earlier panel's litigation? So, I mean, I think I've personally sat, probably any number of us have sat in a case where we're called on, I can think of at least one time, reviewing the validity of an agency regulation, and there was a new argument that had never been argued before, and we viewed it as incumbent upon the new panel to evaluate that new argument, because it had not been raised before. Tell us why that's not a valid reason for us to engage in a re-examination of the bottom line question of whether this statute, this New York statute, is a categorical match. So, in our view, DeBake did analyze the age question, determine that this specific statute fell squarely within the generic definition of sexual abuse of a minor, and that case, of course, followed Rodriguez. The only difference between the first degree sexual abuse statute and the second degree sexual abuse statute in DeBake was the age of the minor victim, and then the DeBake court, after identifying that as the doctrinal issue in that case, marched through the Supreme Court's generic definition of minor as 16 from Escobar-Quintana. It discussed the board's decision in matter of VFD, which identified 18. This court looked at contemporaneous dictionary definitions, which define minor as a victim under the age of 18, and then concluded, after looking at all of those sources in a pretty recent decision, that the age issue wasn't of any moment in deciding the DeBake case. And I recognize that the court reserved the age differential question in footnote 6, but in doing so, I think the court was intending to reserve the issue for a closer case, maybe like the New York third degree sexual abuse statute, which has a victim of 17. And when the court reserved the issue, it cited, of course, to Escobar-Quintana, which reserved the age differential question for victims above the age of 16, where there might be a significant age differential between the victim and the perpetrator, or a special relationship, like an institutional setting, that would justify close in age abuse falling within the definition of sexual abuse of the minor. And so, in our view, the court did address the question. Of course, it reserved the age differential holding for a case where it matters. We don't think this is a case where it does. This New York statute falls within the Escobar-Quintana definition of minor, because the victim here needs to be 13 or under. Escobar-Quintana set the floor at 16. And cases like the Garcia-Urbano case out of the Eighth Circuit, which examined the generic definition of sexual abuse of a minor, explained that the age differential can exceed two years, because if courts look at contemporaneous state definitions, any age differential greater than that would exclude the majority of jurisdictions at the time. And this court in Acevedo and the Eighth Circuit in that case have relied on the reasoning that Congress wasn't writing a null statute. It intended to encompass sexually abusive conduct against children, like the seven-year-old victim here. Thank you. Thank you very much. Appreciate it. Attorney Barron, you've reserved two minutes. There you are, down at the end. Or Ms. Nolte, who we'd love to see you again. Height difference here. Two minutes for highlights. OK, thank you. Two quick points. So in Dubique, the age differential was not reached. And when the court was making a determination about the age issue, it was only deciding that someone younger than 14, like sexual contact with someone under 14, could be a sexual abuse of a minor aggravated felony. And that's not something that we argue against. And so they definitely did not look at whether an age gap would be required. And even under the Janus factors, this court could reach the issue of whether they should revisit Dubique and Rodriguez. And I think there are limiting principles. This wouldn't apply to just any case. And looking at whether the court explicitly expressed doubt about the agency's decision is an important point. And then also, what independent analysis they did. But there's also the factors of whether it was correctly decided, whether it was inconsistent with other circuits, and sort of the stability and reliance interests. And in Tennessee v. Becerra, which my adversary raised, the court there, while they did find that they were likely bound under prior precedent, they did an independent analysis under the Loper-Bright and did look to whether the traditional tools of statutory construction, as well as noting that they were likely bound. But they also differentiated between the Supreme Court stare decisis principles and what the stare decisis principles that circuit courts are bound to. And so I would just say, at the very least, the court should give the proper analytical framework to determine whether Mr. Garcia should be removed, being separated from his family and his community that he's built for 40 years, based on a single misdemeanor conviction. And the court should reverse and remand, because the New York statute of conviction is far broader, both on the age gap issue and New York's definition of sexual contact. And in the alternative, the court should remand with instructions to properly consider the new evidence presented in his motion to reopen about the risks he will face abroad. Thank you. Thank you very much. We will reserve decision. Thank you all very much. Very well argued. And in particular, we're very glad to have had Ms. Knoll appear as a law student. Very well done, and very well supervised.